UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

|  |  |
|---|---|
| RICHARD BONOMO, MICHELLE HERNANDEZ and MONA PIRES,<br>    Plaintiffs,<br>v.<br>FACTORY MUTUAL INSURANCE COMPANY, a/k/a FM GLOBAL,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

The plaintiffs, Richard Bonomo ("Mr. Bonomo"), Michelle Hernandez ("Ms. Hernandez") and Mona Pires ("Ms. Pires") (together sometimes "plaintiffs") were entitled to severance benefits from the defendant, Factory Mutual Insurance Company a/k/a FM Global ("FM Global"), pursuant to the Factory Mutual Insurance Company and Its Participating Affiliates Severance Pay Plan ("Plan")(Exhibit A hereto) - when plaintiffs' employment was terminated by FM Global on December 31, 2018 ("Termination Date").  After plaintiffs' termination, FM Global failed to pay plaintiffs such severance benefits as they have paid previous FM employees who worked at the credit union or other division or wholly owned subsidiary of FM Global.

Plaintiffs then properly appealed under the terms of the Plan and FM Global denied the appeals including via a Final Decision Letter (*infra*), in July 2019, and this lawsuit ensued.  The Company has not only violated of the Employment Retirement Income and Security Act of 1974 ("ERISA"), but breached its respective contracts with each of plaintiffs and the imbedded covenant of good faith and fair dealing.

## JURISDICTION

This Court has jurisdiction over this matter because the severance policy was part of the employee benefit plan, the Plan, and it is governed by the Employment Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Under ERISA, a beneficiary has the right to seek review of an insurer's decision to deny a claim for benefits in this Court. *See* 29 U.S.C. § 1132(a)(1)(B).

## PARTIES

1. Plaintiff, Richard Bonomo, is an individual residing at, 49 Hodges Ave 2R, Quincy, Norfolk County, Massachusetts, and worked for FM Global from September 2007 to December 31, 2018.

2. Plaintiff, Michelle Hernandez, is an individual residing at, 64 Laurelwood Drive Unit A, Hopedale of Worchester County, Massachusetts, and worked for FM Global from October 2014 to December 31, 2018.

3. Plaintiff, Mona Pires, is an individual residing at, 88 Plain Street, Fall River, Bristol County, Massachusetts, and worked for FM Global from April 2015 to December 31, 2018.

4. Defendant Factory Mutual Insurance Company, a/k/a FM Global ("FM Global), is a corporation headquartered in Rhode Island, and doing business globally, and in Massachusetts at all times relevant in Waltham, MA and Norwood, MA and at the Chadwick Federal Credit Union (*infra*) facility, in Johnston, RI and in Norwood MA.

5. Chadwick Federal Credit Union ("Chadwick") was a credit union banking facility doing business at all times relevant at 1151 Boston Providence Turnpike Norwood, MA, and

270 Central Avenue Johnston RI 02919; it later merged with City of Boston Credit Union. (*infra*).

6. Chadwick was 'sponsored' [FM Global's self-designated term] by FM Global for at least half a century, and as such, and in accordance with that relationship and the course of conduct as undertaken and implemented, from approximately May 1968 to December 31, 2018, certain persons working at the Chadwick facility, including plaintiffs, received their pay, benefits, and offer of employment, from FM Global (not from Chadwick); moreover plaintiffs each engaged in a job interview process with, and were subject to and adhered to corporate policies of, FM Global. Again, in accordance with this 'sponsorship,' all plaintiffs received their pay and benefits from FM Global while working at the Chadwick facility, until December 31, 2018.

7. Chadwick was not a part of, or owned by, or a division or subsidiary or similar, of FM Global.

8. Chadwick Federal Credit Union was a federal credit union chartered under the Federal Credit Union Act and was its own tax entity insured by the federal government.

## **FACTS**

9. At all times relevant until December 31, 2018, all the plaintiffs performed their work for FM Global at the Chadwick location and were paid their compensation for such work and received benefits in connection with same, from FM Global, again pursuant to the arrangement by which the Chadwick facility was effectively staffed by FM Global ('sponsored'). Plaintiffs performed their duties fully and satisfactorily and were responsible to FM Global's Human Resources Department.

10. On or about February 9, 2018, Kevin Ingham CFO of FM Global advised the plaintiffs that their employment with FM Global would end on December 31, 2018. Further, at the time that FM Global announced plaintiffs' severance date of December 31, 2018, there was no plan in place concerning, nor identification by FM Global (or otherwise), of any entity for plaintiffs' successive employment as of January 1, 2019.

11. Further as at the date of the FM Global announcement of plaintiffs' Termination Date (of December 31, 2018), none of plaintiffs had any successive employment for themselves in place as to where they could work starting January 1, 2019, after they were laid off by FM Global.

12. Instead, largely through the efforts of senior executives working at the Chadwick location, including plaintiff, Mr. Bonomo, a merger of Chadwick with City of Boston Credit Union ("City Credit"), was effected, which initial merger intention was signed on or about July 28, 2018 with final regulatory approval (including by NCUA, Massachusetts Division of Banks and Rhode Island Division of Banks) granted on October 2, 2018 and the final merger agreement was signed on January 1, 2019. ("Chadwick Merger"). FM Global was **not** a party to the merger.

13. As a result of the Chadwick Merger, the FM Global employees to be terminated at December 31, 2018 by FM Global, including plaintiffs, were able to be employed in 2019 by City of Boston Credit Union starting on January 1, 2019.

14. Plaintiffs properly sought their severance payments under the Plan from FM Global and FM Global denied such severance benefits to plaintiffs in writing via i) two separate emails in December, 2018 and then again ii) in the March 27, 2019 letter from Glenn E.

King to Mr. Bonomo ("King Denial Letter") and finally in the July 25, 2019 letter from Ms. Fidler ("Final Decision Denial").

15. In accordance with the Plan's terms, plaintiffs appealed the adverse decisions under the Plan (*See*, Claims Procedure under the Plan) and fully exhausted plaintiffs' remedies under the Plan. See, e. g., plaintiffs' counsel letter of May 25, 2019, appealing the King Denial Letter ("Plaintiffs' ERISA Appeal Letter").

16. The Plan is an ERISA plan and the relevant terms provide for severance benefits to persons who are employees of FM Global, such as plaintiffs.

17. Defendant Factory Mutual Insurance Company, a/k/a FM Global is defined as the "Company" in the ERISA Plan (*See,* ¶ A).

18. At no time relevant was there a sale, transfer or merger [or spin-off] of FM Global - any such putative events called "FM Global Reorganization."

19. At not time relevant did FM Global undergo a "similar corporate transaction" to any FM Global Reorganization.

20. At no time relevant in plaintiffs' employment with FM Global was plaintiffs' employment terminated from FM Global in connection with any such FM Global Reorganization or "similar corporate transaction."

21. Further, at no time were any of plaintiffs offered employment by a successor employer, to wit, a successor to FM Global, because, *inter alia*, at no time relevant was any successor to FM Global formed and/or extant.

22. FM Global employees, other than plaintiffs, have also been terminated/ and/or offered options to accept a new job with a new company ('sponsored' or similar by defendant) and were duly paid severance benefits under the Plan ("FM Global Paid Employees"), in sharp contrast to the treatment given to the plaintiffs by defendant – to wit, defendant denied plaintiffs' severance benefits. FM Global Paid Employees paid such severance, were similarly situated to plaintiffs in relevant aspects to the Plan, yet the FM Global Paid Employees were paid severance and plaintiffs were not.

23. The payments to FM Global Paid Employees (again, similarly situated to plaintiffs) for severance benefits were made by defendant based on various justifications provided by the defendant, including the so-called AGILITY and/or AGILE program; further defendant arranged for cafeteria workers to be paid severance benefits for time working for FM Global and arranged for such cafeteria workers to immediately obtain jobs at a successor entity, Next Dine, after their tenure at FM Global ended, due to the closure of the cafeteria facilities. FM Global Paid Employees ended their work at FM Global and begin working at a sponsored/ successor entity immediately after ending employment with FM Global. To wit, persons who were previous FM Global cafeteria employees were paid severance by FM Global and FM Global was aware, and allowed, FM Global Paid Employees to obtain employment with the successor company, Next Dine (which company FM Global had arranged to take over the cafeteria operations in Waltham and Norwood, MA) and yet the FM Global Paid Employees were still paid severance from FM Global.

24. In general, in response to plaintiffs' requests for severance benefits, defendant claimed that plaintiffs' ERISA claims fail because they allege there was a 'sale or merger or

similar corporate transaction' under the Plans' terms.  As noted, the facts are contrary and there was not sale or merger or similar corporate transaction of the Company in the Plan, FM Global.

## COUNT I

### (Breach of Contract/Violation of Covenant of Good Faith and Fair Dealing)

25. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the paragraphs above.

26. Defendant breached their agreements with each of plaintiffs, including their respective employment-at-will employment agreements, violating the covenant of good faith and fair dealing inherent in every contract, misrepresenting that the plaintiffs would be treated fairly in terms and conditions of employment and by misrepresenting the terms and conditions of the Plan and acting to deprive plaintiffs of benefits under the Plan.

27. Defendant's breaches were material.

28. Defendant acted without good faith toward each of plaintiffs, or worse.

29. As a result of defendant's breaches, plaintiffs have suffered substantial damages, including but not limited to severance pay under the Plan, consequential or incidental damages, interest, costs and legal fees.

## COUNT II
### Denial of ERISA Benefits in violation of 29 U.S.C. §§ 1001 et seq.

30. Plaintiff realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

31. Plaintiff s were enrolled in the Plan, are bona fide participants in the Plan and properly are entitled to its benefits.

32. Plaintiffs were wrongfully denied benefits under the Plan.

33. Plaintiffs exhausted all administrative remedies under the Plan.

34. As a result of the aforesaid wrongful denial of benefits, Plaintiffs are entitled to: severance pay and benefits, all actual, consequential and incidental damages; all interest calculated on foregoing amounts sought at the prevailing rate; and reasonable attorney's fees and other costs of this action.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY OF ALL CLAIMS.**

**WHEREFORE**, the plaintiffs pray that the Court grant the following relief:

I. Enter judgment for the plaintiffs awarding damages as set forth in Counts I – II;

II. Award the plaintiff interest, costs and reasonable attorneys' fees; and

III. Provide such other and further relief as the Court deems appropriate.

Dated: October 26, 2021

Respectfully submitted,
For the Plaintiffs,
Richard Bonomo, Michelle Hernandez and Mona Pires,
By their attorneys,

/s/ William J. Royal Jr.
William J. Royal Jr. BBO # 432220
Royal Law Firm
27 Mica Lane
Wellesley, MA
888-600-5133
bill@massbaylaw.com

/s/ Lisa S. Carlson
Lisa S. Carlson BBO#668824
Mass Bay Law Associates
PO Box 1020
Lakeville, MA 02347
(888) 333-5133
lcarlson@massbaylaw.com